Go ahead and call the next case Bull Intl v. MTD Consumer. Okay, Mr. Ludwikowski. Good afternoon, Your Honors. May it please the Court, my name is Jeff Ludwikowski. I represent appellant in this matter, Bull International. I'd like to reserve two minutes for rebuttal, please. All right. Your Honors, this case involves the termination by MTD of an equipment dealer agreement with Bull International. We are here on an appeal from the Order of the District Court granting MTD's Rule 12b6 motion, dismissing the entire case, all ten counts, with prejudice. Right, and we're familiar with the briefing in the background, so maybe we could get right into this first by asking you about your claim that there was some renewal of the contract by virtue of two things. In this case, the one you point to reaches back into the 90s, so even if that were a renewal, it wouldn't be a renewal that was affected by the new OEDA, right? That's correct. The OEDA was passed in 88, but it was amended in 2002, and the substantive changes are from 2002, so that's correct. All right. So the only thing that you can rely on to say that that Equipment Dealer Act from Ohio affects a change to your contractual relationship is the assertion that MTD changed its business model, its business practice, by going to market through big box stores, correct? Correct. And if I read your briefing correctly and the complaint correctly, that's something which you've said is something that your client absolutely didn't agree to. It was a unilateral change by MTD, right? Not only was it a unilateral change, it was contrary to prior representations that MTD had made, not only to my client, but to all the members of the independent retailer network. Okay. With that as background, I'm a little nonplussed by the argument that that constitutes an amendment to the contract if it's agreed or it's asserted emphatically that this was a unilateral change, not agreed to in any form or fashion by Bull International. Can you point us to any authority for the proposition that a change in business strategy unagreed to by the other side constitutes a contract modification? Your Honor, I don't think that the language modification is necessary here. I think the law states that if there is a material change in the nature of the relationship of the parties between the time of the initial contracting and subsequent to the passage of the act, it works in novation of the contract. And there's several cases that support that position from Ohio, from Illinois, and in fact this court in the GMC versus new AC Chevrolet case in 2001 said that any change that's material works in novation and it's material if it deprives the injured party of what is justifiably expected under the contract. But that was a specific case. That was about a material breach of contract. There was no allegation here that there, or if there was, it's certain I didn't pick up on it, that there was a breach of contract in them going to big box stores. The assertion is that it's a change in the contractual relationship that allows it to be viewed as a renewal or a new contract, right? But it would in fact be a breach as well here because there were specific representations made. This is why the initial change is important, Your Honor. When MTD approached the independent retailer network and asked the independent retailers to become exclusive MTD, Cub Cadet dealers, give up all their relationships with all their other manufacturers, one of the things that Curt Mull, who was the primary owner and chief executive of MTD, told the IRs, the independent retailers, was you'll be part of the Cub Cadet family, your future will be secured, and we'll continue to market only through the IR network. Now, we didn't specifically allege those things in the complaint. We said that they only marketed through the IR network, that that was the only way they marketed up to that point. We said there were promises made. I didn't specifically say what those promises were, and we can do that. Well, but could you do that? Because part of what's going on here is there's an integration clause with this contract, right? And that ought to have some meaning, shouldn't it? Well, it would, except under Ohio law, both statutory and case law, where a modification, or in this case a breach which results in a modification, is actually performed. It constitutes a waiver of the requirement that it be in writing. Well, you kind of put the rabbit in the hat there a minute ago, didn't you, when you said a breach that becomes a modification? I mean, a modification of a contract, I always thought that was two parties agreeing that their contractual relationship is going to change because of something. They either modify it because they get together and they sign a new paper, or they modify it because they both, through a course of conduct over time, manifest their assent. That is, both parties manifest their assent. So that's what a modification is, and what I guess I'm wondering is, since you have avowedly and aggressively said we never manifest the dissent, we will always oppose that, how can it be a contract modification? Well, there was a course of dealing that developed. We didn't have a choice as to whether or not to manifest the dissent. We were a captive dealer. Sure, you could sue, right? If you thought this was a breach of contract, you had legal remedies. I suppose that that's probably true, Your Honor, except this was the only source of law and guard equipment that my client had. Had they sued, given the situation we're in today, it certainly is foreseeable that we would have been in this situation then. They would have been cut off, put out of business. My client was kind of going along to try and make the best of things, and there was a course of dealing here in that my client continued to service all of the MTD products warranty claims, which there were thousands recently, at a loss on products that he was not making a profit on selling because they were being sold through big box stores. But the course of dealing developed. He continued to do that. All of the members of the IR network continued to do it because they didn't view that they had any choice in the matter. They were captive. Well, let's assume that this did work a change. In your briefing, I didn't see much, maybe any response to the Ohio constitutional law argument being made by the other side. They say that the Equipment Dealer Act can't have the effect you're talking about because it would be in violation of the Ohio Constitution, that kind of retroactive application. You make several arguments based on the Contracts Clause of the U.S. Constitution. Why don't you respond to their argument, their Coulter-Pontiac-based Ohio Constitution argument? Your Honor, although we disagree that it would have unconstitutional retroactive effect, this court doesn't need to reach that issue because these are two different issues and it can decide this case on a narrower basis. This is not a retroactive application if there was a material change to the contract after the date of the statute being applied. They're two separate issues. And frankly, I will admit to this court that the weight of authority on the retroactive issue taking out a material change is against us. Well, okay, but how can it not be a substantive effect? I take it what you're saying is we could decide that this is really a remedial and not a substantive change. Is that the assertion? No, it's not. And maybe I'm not being clear. I am not arguing that this court needs to apply the Ohio statute retroactively. To the contrary, I am arguing that because a new contract came in effect after the date that the statute was passed in 2001, that being that they now forced upon Boal Modification to market to big box stores, that this is now a new contract that is after the date of the statute. And accordingly, retroactivity becomes irrelevant. Okay, I'm with you. They weren't able to sell through big box stores. They were contractually barred from selling through big box stores before that date? No, but there never were any stores selling other than through the IR network. That's kind of the point here, Your Honor. When the contract was entered, the practice of the parties was to only market Cub Cadet products through the independent retailer network. That was the assumption behind the contract, that they would be the only ones who would have the right to market these products. Well, I don't understand. The term big box stores is sort of vague, isn't it? I mean, I visualize myself, you know, a freestanding box, like it's a big box. And then they sell all kinds of stuff in it. Personally, I hate those places, but I'm a minority. But can it be a big box store if it's in a shopping center where there's one store after another lined up? It's not a box at all. I absolutely agree with you, Your Honor. But as I understand it, having gotten involved in this case, among dealers in the industry, the term big box store is a well-understood term to mean stores like Home Depot, Lowe's, Tractor Supply, that carry a vast array across a wide area of different types of supplies and so forth, as opposed to independent retailers like my client, who only marketed and sold lawn and garden equipment, farming equipment, and light industrial equipment. Which of the contracts are you referring to here? All three? Well, no. The one that has the language in it that is at issue, the termination language, there are in fact three agreements, but I believe it is the sales and service agreement, which is attached to the complaint as Exhibit 2. But in your complaint, you do assert that the SSA is a continuing agreement with no expiration date. That's correct, Your Honor, we do. But I don't need this court to go that far. Our better argument here before this court is that you don't need to retroactively apply this under the terms of the Ohio Equipment Dealer Association. If we didn't agree with you that there was a modification worked by the change in business plan, then you'd be in a tighter spot is what I hear you acknowledging. We have one less argument, Your Honor, but we've asserted several alternative arguments, one of them being under the implied covenant of good faith and fair dealing. I thought that was your best argument, actually. Thank you, Your Honor. I appreciate that. What you're saying is that that's not dependent upon a contract. It's carrying out the contract they agreed to, I mean, in a sense. That's exactly right, Your Honor. If that's the point, then answer their contention that that's a gap-filling provision. That's a principle of law that fills in where the parties haven't agreed, but the parties here did agree. And what they agreed to was either side can walk away from this in 30 days at any time, without any reason given. It's just at will. So they had an agreement. There's no gap to fill. Except, Your Honor, they're arguing, we believe, a pretext that this was a termination without cause. And I'm glad you used at will, because there's lots of case law that is analogous to this situation, dealing with at will employees, where the courts have said, you can't terminate an at will employee, and it would be our position, you can't use a without cause provision as a mere pretext to terminate a captive dealer for improper reasons. Do you have any case law that you can point us to that says that an independent business person contracting with a supplier is in the position of an employee? These are independent businesses, right? Yes. Yes, Your Honor. We cited in our brief the Florence urgent care case versus HealthSpan, which was two independent contracts. One party was terminated under a clause in the contract. That is a case under Ohio law, Federal District Court, Southern District of Ohio. One party terminated the other under a so-called without cause clause. The court in that case said that a without cause clause does not allow termination when it is being used as a pretext for improper purposes as opposed to no purposes, and that, quote, invidious purposes running contrary to public policy are not permissible to terminate. That's a contract like ours. Now, in that case, the facts were somewhat different, but in our case we're arguing that there were public policy issues here that were protected, that being Bull's right to engage in the legislative process, and this court, in fact, in the NovoSol opinion, which we didn't cite in our brief, I just found this this morning, NovoSol versus Nationwide Insurance. It's 721F2nd894. In that case, the court held that whether to engage in lobbying activities or not engage in lobbying activities was a protected right, and that it's analogous in that it's an at-will employee and you couldn't terminate. That's as a matter of public policy. Okay. Go ahead. Oh, I'm sorry. I wanted to ask you about the gist of the action argument. Your Honor, we do not believe the gist of the action argument applies here. MTD relies primarily on the SunQuest case, an 1899 case. Pennsylvania, the Pennsylvania courts have subsequent to that, narrowed the scope of the gist of the argument doctrine in the Bruno opinion, and in that opinion, the court has said that the gist of the action doctrine only applies if there are no existing obligations under a contract that was breached. We don't have that. Your Honor, two things here. Either it is our position that the conduct that we're saying gives rise to the tort claims is collateral to the contract. We're not saying it's the termination of the contract that gives rise to the defamation claim. It's, in fact, the publication of that termination to all the other IRs and to all the vendors and so forth that gives rise to the defamation claim. We believe that's collateral conduct. But under Bruno, if all of the contract claims are dismissed, there can be no existing obligation that was breached that gives rise to the tort claims. Wait a second. Are you saying that if you lose your contract claims, you actually are a beneficiary of the losses of those claims because it opens up for you the opportunity to raise tort claims? Yes. It's part of my schedule. All right. Anything else you want to ask on that? I had one further question. My colleagues here will allow me to impose on you and your client for another moment. You have argued that you have a breach of implied warranty of merchantability. Yes. And you have argued we're a customer because if we're not the ultimate consumer, we're a purchaser. There is, I believe, several attachments to the complaint. A specific statement on appendix page 312, it's the manufacturer's limited warranty for Series 2000 tractors as an example, that says, quote, there are no implied warranties, including without limitation, any implied warranty of merchantability, close quote. That's in bold-faced type. I understand Ohio Allow permits the disclaiming of the implied warranty of merchantability. How do you get around that? Your Honor, the point that you're making that MTD made is that we are limited by the same restrictions that the consumers are limited by. I guess. I mean, you're saying treat us like a consumer for purposes of getting the merchantability warranty. No. Actually, we're saying you can't treat us like a consumer. We are, in fact, in a much different position. We are entitled to a certain implied warranty of merchantability on our own grounds. There's no Ohio case law specifically on whether a dealer is limited by the consumer restrictions. But there's a very good case from New Jersey that is directly on point that addresses this issue. It is the Harborview Yacht Sales versus Ocean Yachts case. In that case, the court said that because a dealer is in a much different position than a consumer. Is that case, it's a New Jersey case, but is that in the federal court or the state court? It's federal court, Your Honor. Which I thought, I think I was on that panel. You may very well have been, Your Honor. And that opinion says that because a dealer is in a very different position than a consumer, the dealer would not be limited by the restrictions in those implied warranties that flow to the consumer. But, in fact, a dealer has a right to expect a pristine product. Okay. Thank you very much. We'll have you back on rebuttal. Thank you, Your Honors. Mr. Zilfran. Good afternoon, Your Honor. Steve Zilfran on behalf of the defendant, M.T.D. I feel a little bit of a disadvantage this afternoon, Your Honor, because the theories of this case have changed so many times. When you read Judge Sircone's opinion, there was clearly a theory here that there should be retroactive application of the OEDA. I think that's been completely abandoned after the filing of the reply brief. So I'm prepared to answer any questions about that. Okay. Well, I'd actually like to ask you questions about where I ended with your colleague on the other side, and that is to inquire about the implied warranty of merchantability. The district court dismissed that and said that Bohl had mentioned none of the six criteria of merchantability. And you say at page 12 of your answering brief, in effect, the same thing. Quote, Bohl did not allege any of the required elements under Ohio law showing the products were not merchantable. And then you cite the statute. I look at their complaint, and I'm having a hard time figuring out where you're getting at, because count four of their complaint has at paragraph 107 the following. Quote, a good will be considered merchantable if it at least passes without objections in the trade under the contract description, is of fair and average quality within the description, is fit for the ordinary purposes for which such goods are used. And I could keep reading the whole thing, but I read the paragraph. I went back, and I compared it to the statute. Practically, in HACBORBA, it's got all six of those criteria. I just don't know where you're coming from when you say they didn't say it, and I don't understand where the district court was coming from either. Can you enlighten me? I think I can a little bit, Your Honor. I think the district court was, for this point, was focused on the damages and the fact that there was no allegations. And when you go to pages 18 and 19, a little further into our brief, Your Honor. That isn't what the district court said. The district court said straight up, you didn't, you know, in dismissing this, said, well, you didn't even give us the elements of the statutory claim. And you said they didn't do it. And they did it. I'm reading it. I'm looking at it. Well, one of the elements is damages, which they don't do anything with. And the problem is, Your Honor, they also further in their complaint, they go on and they show that they sold these products, and part of their claim. So am I hearing you right that you're acknowledging that they, in fact, did, in their complaint, list out and cite the statutory elements that they have to make out? Or are you contesting that 107 is somehow inadequate for them to lay the foundation for their claim? Yeah, I do believe that just setting, they certainly, I don't dispute what you're reading, Your Honor, but I don't believe that they have pled any of their facts to fit within that statutory framework. Well, that's a very different thing than saying Bold did not allege any of the required elements because they at least listed the elements. Now, going to whether they made factual statements in support of that, can you help me out with that piece too? Because when I was looking at that, it looked to me like they went through in some careful detail, you know, that they thought you folks had not provided equipment that met a certain standard. I should have right at my fingertips. Yeah, and we cited some cases, I think, that showed that there is no cause of action for not following those standards. That's not something that is contemplated as a requirement or certainly under ORC 1302.27. What I'm struggling with is the court didn't go into an analysis like that. It said there weren't facts pled. And when saying there isn't facts pled, if you look at paragraph 122 of the complaint, it talks about Bold receiving multiple complaints about hood failure, about steel hub failure, about the base failure. It talks about how that costed $100,000 for unreimbursed warranty, a reduction in the value of Bulls ongoing business, a loss of value of inventory. That kind of looks like they're alleging specific facts and damages. How does that fall short of making a 12B6 satisfactory claim? I think, Your Honor, the inconsistency is when they're talking about the issue with the repairs and their, as counsel had indicated earlier, the fact that they weren't making as much money on the repairs. And they talk about all the different – that's the context in which those are being described. There are many repairs that they did, none of which suggests, however, that they couldn't sell the products because of any of those things. In fact, to the contrary, they indicated they sold all of those. So they clearly were mercantile. And the fact that they came back for repair work doesn't make them unmercantile. Well, maybe I'm misunderstanding their complaint. I believe that we're required and that the district court was required to take every fair inference from the complaint as pled, right? So if they come in and they say the plastic hood's failed, the holes drilled in them are wrong, they crack, they're problematic, the wheels are failing, the seats are failing, this is negatively affecting the goodwill of the business I've built. This is my whole business. By you telling me to be your exclusive dealer, I'm not working with anybody else's product. So if you give me bad product, that hits the goodwill of my business. The value of the inventory decreases. That's a real damage to me. Now, taking a 12B6 perspective on that, how is that failing to allege with sufficient specificity a damage that's recoverable by the dealer purchasing the equipment? It's not recoverable in the context of a breach of implied warranty of mercantility, Your Honor, is the best way I can address that. It's not pled in that context. Does that mean you can deliver a defective product? No, Your Honor, it doesn't mean we can or that we should or that we do. No, no, no. But the allegation is that there was untold number of fractures and breaks in the way the screws were put in and the holes and the seats and all of that that necessitated a lot of repair work, which seems to show something was wrong. Well, if you take all of the repairs that were done over a 40-year period and you line those up and you say, look at all these terrible things that have happened to these products, by the way, which Mr. Bull and his company have been paid for, for that repair work for all those years without complaint. But now after termination, all of those things now are going to become the basis for unmercantable products, which they had no problem selling for about 35 years, 40 years before that. That's a great jury argument, but we're at the motion to dismiss stage, right? I agree, Your Honor. Again, it doesn't relate to the implied warranty of marketability. How can you say it doesn't apply to that? I mean, they've said these things aren't merchantable. They've said why they think they weren't merchantable. I'm missing your logic. You've got to help me out. Well, what more did you want them to say about why they thought your product had deteriorated over time in its quality and was costing them money? Maybe just not to skip the question, Your Honor, but the other thing that Judge Sircone focused on was the fact that these particular allegations that they made, again, not relating to the mercantable nature, would be for the consumer to make. There's nothing that puts them in the shoes of a consumer. Well, there's an Ohio case that puts them in the shoes of the consumer, right? We just found that on page 18 and 19 of our brief, Your Honor, with about seven cases. We don't believe that that's the law. We don't believe they stand in the shoes of a consumer. We don't believe that there's any authority that puts them in the shoes of a consumer. When you say there's no authority, Maritime Manufacturers, Supreme Court of Ohio, 1985, quote, nowhere in this section, meaning 1302.27, the one we're talking about here in the Ohio Revised Code, nowhere in this section or any other section of the Revised Code or the Uniform Commercial Code is there a statement to the effect that only the ultimate consumer may sue for breach of implied warranty of merchantability. That's a per curiam opinion from the Ohio Supreme Court. Do you have something that overrules that? We cited a number of cases on pages 18 and 19, which I can get for you, Your Honor. But do you have something that overrules that? I don't believe any of those cases directly overrule. In that case, if there's a holding there, that's to be overruled. You know, your contract provided that you didn't have to have cause terminated on 30 days notice. And I can understand a contract that says you don't have to have any cause, you don't want to get involved in a lot of discussion. But, in fact, is there some cause that you might not be able to terminate the person? For example, you're a member of some political party, the person is supporting some candidate you're not, and I'm going to just terminate your contract. I mean, you know, something like, I mean, I'm just using an example. There are certain things that just seem wrong. I don't know. Could you do that? I don't think you, Your Honor. The great thing about this particular contract provision is I don't think we have to determine whether it's good, bad, or indifferent because they're simply terminated for no cause. I know. It's written, you know. But the question is, suppose it could be shown that it was bad. For example, I'm going to terminate you, but I'm not going to tell you this. But in my mind, and I remember being in a case like this where there was some discussion. It was in a discrimination case. You usually don't get this, but about the person's race or something, some, you know, protected qualification of the individual. But, I mean, suppose could you terminate the person because you decided, well, we have too many people of that religion who are dealers. Yeah, I mean, certainly, Your Honor, we could not do anything that would be for a discriminatory purpose or would violate some other law. But here they weren't terminated for any reason. And the fact that they can come up with, well, here's some reasons that might be bad, I don't think changes the fact that this is. And I think this particular contract makes it even easier for us because this is a mutual termination. They could have terminated this for no cause, just like we could. That's what the parties agreed to. And that's really the point here, Your Honors, is that there's no basis for a breach of contract case here. There's just simply no breach because the parties did what they agreed to. And so I thought you were going to ask me, Your Honor, about when you talked about what Mr. Ludwikowski had about the contract claims dropping out and you get the tort claims. I mean, there's cases on point, but that's simply not the way this works. When the judge reversed this, did he give the plaintiff an opportunity to amend? They did amend. They did that? They did, Your Honor. They amended. This was an amended complaint. The motion to dismiss was filed. The court permitted an amendment on October 1, 2014. To do what? They added other counts. They added one count, I think. I think four. I wonder about the count about the merchantability. Did the judge just dismiss that? Or did the court just dismiss that, didn't it, without mentioning that they had 30 days to amend or something? I don't know. Actually, I think that was one of the counts that was permitted to be amended. And then the motion to dismiss was filed at the end of October, roughly a month later, and he dismissed the merchantability along with the other counts, in part because Judge Stracone said that the claim was subsumed by the contract claims. That was his analysis. Just that the action may be appropriate there. You do rely on the disclaimer of the warranty of merchantability, not something, by the way, that the district court appeared to have relied on at all. How do you get that into the mix, given that this is a 12B6 claim? The disclaimer? Yeah. We're supposed to be looking at the complaint, right, and things that are integral to the complaint. And at this stage, that's it. So you put that in front of us in an appendix, but can we properly look at that? Or is that something for you to take up and deal with later on in the case? Maybe it helps you in summary judgment. Maybe it doesn't. Yeah, I think it came up in that Warnock v. National Football case. I think that's where we referenced that. It's on page 16 of our brief. I think that's where the reference came from, and we just addressed it. I don't know that we necessarily relied on it. I don't know we need to rely on it. It's in the appendix. It's in the appendix, and the case is cited. I don't know that we need it. Okay. I don't have anything else. All right. I just wanted to give the citation just to be clear. The Lake Dock Company v. Messenger Bering Corporation case, which is 577A2nd631, is the case that says that once a contract claim drops out of the case, it doesn't magically emerge with new tort claims. Before you go, there is one thing I would like you to respond to. Your colleague has said, hey, the Harborview Yacht Sales case. The boat case. They're from the District of New Jersey. That will tell you what you need to know about our right as a dealer to bring these claims. What's your response to that? It's a case that the district court specifically distinguished, but what's your response? I think it's distinguishable. I did agree with the analysis in the district court. If you read the facts, unsurprisingly, I think if you read the facts of that case, it is a very different case than what we're talking about here. Because? In that case, I think they actually have a breach of contract. And here we just don't. It was a different contract. There wasn't anything in that case that I thought, other than there was a product, which was a boat. All right. Thank you. Okay. Thank you, Your Honor. Mr. Levikowski, your rebuttal, please. Thank you, Your Honor. Just a few quick points, Your Honor. We amended the complaint voluntarily to add a count. We were never given the opportunity to amend in response to the court's opinion, which we believe is erroneous, by the way, but according to the court's opinion that we failed to properly plead certain elements. That's right. I thought I was asking that, actually. So you're saying you didn't have an opportunity to amend when the judge wrote that long opinion. That's correct, Your Honor. And this court has said, especially in the Travelers v. Dammit case, that even if we don't ask for permission to amend, that's the favored result if the alleged deficiencies are pleading deficiencies, which at least in two counts here they are, the implied warranty count and the promissory estoppel count. Like I said, if we need to plead more specific promises, we can. If we need to plead 1,900 serial numbers and models that were defective, we can. We're going to have a 450-paragraph complaint instead of a 174-paragraph complaint, but we can do that, and we should have been given the opportunity to do that. Secondly, MTD asserts that we were paid for the repairs we did on the warranty work. The problem is what we were paid was not enough to cover our costs. We did warranty work at a loss for the right to sell the machines at a profit. When the marketing strategy changed and we now have competitors that have no obligation to do warranty work, taking market share, depressing our profit margins and taking our market share and dumping their warranty work on us. Warranty work, by the way, which never should have needed to be done because it was defective products. And that's the point of the warranty claim. There were literally every single machine in various models defective in substantial ways. We didn't know they were defective when we sold them. When they came back and started coming back in droves, we realized, you know, Washington County, Pennsylvania, your honors, if you haven't been there, it's very hilly. People would be going down a hill and the wheel would literally break. The machine would roll. At the bottom of these hills, there's frequently water streams. This was very dangerous. So we were doing the warranty work at a loss, and that's an important point here. Okay, you're going to need to wrap it up. Okay, one last point, your honor. We are not standing in the shoes of the consumer on the warranty claims. We are asserting that on our own behalf. That's why we're not limited to the restrictions. And as you correctly point out, those restrictions aren't a matter of record anyway. All right. Thank you, your honors. Thank you very much. Appreciate the arguments today. We've got the matter under advisement, and we'll call our.